**FILED**
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS

Apr 29, 2025

OFFICE OF THE CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**TEXARKANA DIVISION**

JIMMY L. BROWN
    *Plaintiff,*

VS.

LEOLA GRAVES, individually and as the
Executive Director of the Housing Authority
of the City of Hope (HACH) when she was
employed by the HACH; ZACH HICKS,
individually and as the Executive Director of
the HACH and when he was the Assistant
Executive Director of the HACH under
Leola Graves; CHARLES WRIGHT III,
individually and as the Apartments Inspector
of the HACH; MECHAWANA PEARSON,
individually and as the Public Housing
Manager of the HACH; the HACH as an
individual entity; and the UNITED STATES
DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT, as an individual
entity,
                    *Defendants.*

No. 25-_cv-4029_____

First and Ninth
Amendments

42 U.S.C. § 1983
28 U.S.C. § 1343
29 U.S.C. § 794
24 CFR 966.50-966.57

## COMPLAINT

The Plaintiff alleges against the Defendants:

### I. JURISDICTION

1. This action is brought under the First and Ninth Amendments to the Constitution of the
United States of America, and under 42 U.S.C. § 1983, 29 U.S.C. § 794, 28 U.S.C. § 1343
and 24 CFR 966.50-966.57. The conduct of the Defendants is state action for the purpose of
§ 1983.

**1**

## II. FACTS

**2.** Concerning the defendant Leola Graves, the HACH Board of Commissioners voted to end Ms. Graves' tenure as the Executive Director due to a report from the United States Department of Housing and Urban Development that found deficiencies in the way the HACH was being run, on July 13, 2023.

**3.** I had been living in Hope, Arkansas public housing -HACH-, at the same housing site, for **FORTY-SEVEN (47) YEARS**!(affordable rent) when on the morning of May 4, 2022 I was finally made a homeless wartime disabled veteran by the HACH, **after years of them trying to do so**. They were able to do this because of an unfair trick that was in the unfair lawsuit that they filed against me in court. This **unfair trick** caused me to make a mistake and not file an answer to the lawsuit. The unfair trick is that there were **two (2) answer-by dates in the lawsuit document** that the HACH served me with.

**4.** For more than thirty (30) of the forty-seven (47) years that I lived in public housing, things went relatively all right – no major problems. But then Charlene Hale took over as the Executive Director, and Leola Graves was her Housing Manger. That is when the HACH started complaining to me about the "**clutter**" in my apartment – **having too much stuff in my apartment**. To compound the problem that I was having with them about my "clutter", one year a HUD **REAC** inspector – a group of inspectors who randomly select and inspect apartments at Housing Authorities across the United States – wrote my apartment up for **"refuse on the back porch."** I swear to God that those fatuous people at the HACH took the word "refuse" **to mean every single thing that I had on my back porch, including the**

**2**

**chair**. <u>The day before</u> I had been on my back porch doing things of leisure and a little bit of trash – loose paper, a soda can, stuff like that – was on the porch that I had forgotten to clean up. There is a statement in an old letter to me from the HACH dated **February 27, 2006** that states **"Remove items from back porch."** And then, of course, they started **harassing** me about the things on my porches.

5. All the while the HACH was complaining to me about my "clutter", my "clutter" was not hurting anything nor anybody, and my apartment was safe and clean: there were no cords nor other tripping hazards on the floor, the regulation number of windows were unblocked, the front and back doors were unblocked, the fire extinguisher was always visible and easily accessible, there were no combustible items placed nor stored near the cook stove, you didn't have to squeeze around anything to walk around inside the apartment, and when the apartment got dirty, I cleaned it up. All of the safety measures that were supposed to be into play, were into play.

6. **In 2010**, Charlene Hale evicted me because of my "clutter". We went to court, but I did not have a lawyer. At the trial, Judge Randall Wright listened to my testimony. The HACH, only Charlene Hale, testified too, and did not present any documents nor anything else to the judge. **The HACH has a penchant for not telling the truth and can be very malicious**. At the end of the trial, the judge granted the HACH a Writ of Possession. But I don't think that Judge Wright entirely wanted to grant the HACH a Writ of Possession because he asked me if I was a veteran and I told him yes.

7.  Later I talked my way into staying in my apartment by telling Ms. Hale that I would rent a storage unit and reduce the contents of my apartment. And that is what I did. After letting me remain in my apartment, the HACH said that it would be giving me more frequent and "special" inspections to monitor my "clutter".

8.  **Two (2) Years later, in 2012**, Leola Graves, who had become the Executive Director, evicted me again because of my "cluttered" apartment. We went to court and I asked Judge Wright to recuse himself because he had heard the first case concerning my "cluttered" apartment. I also flat-out told him that I was going to lose the case if I did not have a lawyer, and I asked him to give me some time to find a lawyer. Although he did not recuse himself, he did give me some time to find a lawyer and he set another trial date.

9.  I found a lawyer here in Hope by the name of **William K. Moritz**. I don't think that he's here in Hope anymore. Mr. Moritz talked at length with me. He started out talking like he wanted to help me to sue the HACH. But then he asked me if my goal was to continue living in public housing, and I said yes. I told him that because of the affordable rent - I couldn't afford to live any place else. I had no choice but to put up with the obnoxiousness of the HACH. But thinking about it later, I think that maybe I should have let him help me to sue the HACH for a million bucks.

10. We went back to court and Mr. Moritz used an **insanity defense** for me. He argued that I was suffering from the mental illness of Hoarding – not being able to stop accumulating stuff and not being able to get rid of anything. I can't remember exactly what Mr. Moritz

**4**

said, but I do remember Judge Wright asking me if I was being treated for my mental illness. I told him no, but I remember it being mentioned that I could probably get help from the Veterans Administration. Although the HACH did not get a Writ of Possession against me, it was agreed that I would lessen the contents of my apartment and try to keep it that way. **The HACH accepted the court's decision and my insanity defense because the HACH did not appeal it**.

11. Then **five (5) years later, in 2017**, because the HACH still thought I was "cluttering up" my apartment, Ms. Graves transferred me to a two-bedroom apartment thinking that by giving me more living space that it would solve the "clutter" problem. So, I moved into the two-bedroom apartment. But the HACH still continued to harass me about my "clutter", and with the frequent "special" inspections of my apartment.

12. **Four (4) years later, on December 15, 2021**, the HACH gave me a special inspection – the second within a six (6) week period. The inspector, Charles Wright III, usually comes alone to do inspections, but this time he was accompanied by the new Public Housing Manager, Mechawana Pearson. When I opened the door he said, **"Hey, Mr. Brown. I'm here to uh, check on your apartment again. Your clutter. It's turning into a problem again."** I started becoming angry and I said, **"What clutter? I ain't got no clutter. I got stuff."** A moment later Mr. Wright asked me, **"Did you, uh, did you get the stuff off the back porch?"** I answered, **"What stuff? That stuff is stacked up against the wall, it's stacked neatly, it's not hurting anything, that door (back screen door) opens all the way…"** Mr. Wright said, **"Yeah, it's goin, it's like, it's, but you know, but it's wood material and**

**5**

stuff…" I said, **"Why does it matter if it's wood material (plywood and short planks)? I use it all the time."** Mr. Wright said, **"Yeah, it's goin', you goin' have to move it. You got to get it off..."** I said, **"I ain't gonna move that. It's been there like that, it's not hurting anything up against the wall there. I don't have how ya'll come up with this stuff, man** (but I do know – and it's explained in paragraph two (2) above). **I mean you can go anywhere in the United States, you can see people with stuff on their back porch!"** Then Mr. Wright and Ms. Pearson simultaneously said, **"Yeah, but this is housing."** I said, **"Even if it is housing, people got rights, man."** They agreed with that statement, but then Ms. Pearson said, **"Housing has rules, that's all we're saying."**

13. **It is my belief that the HACH is not interpreting nor understanding some HUD rules correctly.** I say this because about **three (3) years** before I was evicted in 2022 a woman **REAC** inspector came to my apartment and she did not say anything about the things I had on my porches, including the plywood and planks that I had on my back porch, nor did she write up the HACH about my apartment. But the HACH is so **unreasonably fastidious** about the overall appearance of a tenant's apartment is that the inspector – Charles Wright III – once wrote me up for putting a small laundry basket with dirty clothes in it, in the bathtub! The main person who was behind the **unreasonable fastidiousness** is Leola Graves though. She is the one who **"schooled"** Mr. Wright, Ms. Pearson, and Zach Hicks to act the way they do. I say this because Ms. Graves evicted me about my "clutter" before Mr. Wright and Ms. Pearson started working for the HACH. Concerning the bathtub that I just now mentioned, when I moved into the apartment, more than **four (4) years** before I was evicted in 2022, the bathtub was defective and Ms. Graves herself told me that they would

**6**

recap the tub with a tub liner. **They never did recap the tub**, even though I had complained about it several times. And I swear to God that there were other things, like the time that the HACH took the fire extinguishers out of the apartments to "redo" them. They did not return those fire extinguishers to the apartments for **at least five (5) days!** I even had to call them to get **my** fire extinguisher back. Also, in an **audiotaped conversation** that I had with Ms. Graves in March of 2021, about a mistake that **they** had made about when I was supposed to start paying a higher rent amount, Ms. Graves **severely insulted me** by saying **"YOU AIN'T NOBODY"** and that I was trying to play everybody else as stupid and wanted to play games.

14. On the matter of "clutter" concerning "too much stuff", there is no HUD regulation nor HACH rule that states a clear verbatim definition of clutter – that states how much "stuff" in an apartment is too much. That means "clutter", regarding "too much stuff", where the HACH is concerned, must be a matter of opinion. I say this because two (2) different **REAC** inspectors came to my apartment to inspect *after* the HACH had started complaining about my "clutter". The **first time** was when I was living at 44 Hopewell Loop. The **second time** was when I was living at 1 Hopewell Loop after being transferred to there by Leola Graves. During neither of these inspections did the REAC inspectors write the HACH up about my "clutter". If they had, the HACH would have let me know in a hurry. The most important aspect of this truth is that I **did not change** the way that my apartment looked like on the inside nor outside. **What this means is that the HACH can say that an apartment is "cluttered" when it might not actually be "cluttered"**. It also means that I undoubtedly

was doing everything that I agreed to do concerning my 2012 eviction trial, in regard to my
"clutter". But apparently that was not good enough for maliciously obnoxious Leola Graves.

**15.** After giving me another "special" inspection in January of 2022, Ms. Graves sent to me a
letter in February dated **"2/16/2022"** informing me about some adverse action that the
HACH was going to take against me. The letter stated that "Due to your failure to maintain
the requirements for tendency (Ms. Graves, or somebody at the HACH misspelled
"tenancy"), in the unit you presently occupy, you no longer qualify for a two bedroom.
Transfer procedures will start immediately, effective February 24, 2022." The letter also
stated that the HACH had "gone beyond normal circumstance and given **you reasonable
accommodations…**" Ms. Graves was maliciously going to kick me back into a one-
bedroom apartment. **I'm almost certain that Ms. Graves sent to me the letter because I
told the inspector that I was not going to remove the "wood material" on my back
porch.** But I moved the stuff off the porch on March 13, 2022. In reference to the term
"reasonable accommodations" in her letter, I believe that she must have used that term
because of my insanity defense at my eviction trial in 2012. Because of my **insanity
defense**, I was officially an insane tenant of the HACH and was eligible for, and needed
"reasonable accommodations" because of it. That is because mental illness is a disability,
and it is the law that government agencies and businesses must provide "reasonable
accommodations" for disabled persons. I believe that this is why Ms. Graves was able to
give me the two-bedroom apartment – **more living space**, more room to put my stuff to
accommodate me because of my mental illness, my hoarding disorder. If Ms. Graves had
put me back into a one-bedroom apartment, it would not have been "reasonable

**8**

accommodations" for me because of my hoarding disorder. It would have made things much worse for me. She punished me for telling the inspector that I was not going to remove the plywood and short planks from my back porch. It was not fair nor legal for her to punish me for my mental illness by eventually filing a lawsuit against me and evicting me.

16. At this time, so as not to cause any confusion, I want the Court to realize that my mental illness disability is aside from my physical disability of having only on hand, my left hand. I was at one time right-handed.

17. In response to Ms. Grave's letter to me of "**2/16/2022**", and a conversation that I had with her about the letter, I submitted a diplomatically written **"Request For A Hearing"** to the HACH, which is on the copied documents that are on the succeeding pages:

## Information Sheet

This information is for:

<u>X</u> Leola Graves, Executive Director     _____ Section-8 Manager

_____ Occupancy Specialist     _____ Site Manager

_____ Kelly Homes     _____ Bookkeeping

_____ Inspector     _____ IT Communications

_____ CFP     _____ Maintenance

Date: *Feb. 24, 2022*    Time: *4:50 p.m.*

Name: *Jimmy Brown*

Address: *1 Hopewell Loop*

Contact Number: *870-331-7060*

Information left:

*Request for a hearing*

Purpose for leaving information:

_____ Change of Income    _____ Change to household size    <u>✓</u> (Other)

_____

*Jimmy L. Brown*
Participant

*BHocker*
HHA Employee

**10**

February 22, 2022

**Jimmy L. Brown**
**1 Hopewell Loop**
**Hope, AR 71801**

**Hope Housing Authority**
**720 Texas Street**
**Hope, AR 71801**

RE:    HHA letter of 2-16-22 stating "...failure to maintain the requirements for tendency..."
(tenancy)

To the Hope Housing Authority:

## REQUEST FOR A HEARING

In accordance with 24 CFR 966.50 - 966.57, chapter 13, section C, I am requesting a hearing in this matter because I disagree with the statements in the HHA letter from Leola Graves of 2-16-22 because of these facts:

1. When the inspector comes to my apartment, he can inspect everything that he needs to inspect - the cook stove, the refrigerator, the light switches, water faucets, etc. - without any of my stuff getting in his way. He does not have to walk around or squeeze around any of my stuff or move any of my stuff out of his way. Where checking electrical outlets is concerned, the HHA rule of requiring tenants to make "all electrical outlets visible" is unfair and totally unnecessary because they do not make furniture to fit the placing of outlets! An outlet can be anywhere in an apartment. If tenants followed that rule, some tenants, including me, would probably be able to perhaps have only half the furniture that they have, with no washer and dryer. Even the HHA themselves would not be able to provide a cook stove and a refrigerator for tenants! Besides that, inspectors do not really need to

**11**

check electrical outlets during inspections anyway. An electrical outlet is just a simple wire terminal - a wire connection. It is connected to the wiring inside the walls of a building. The only time that an inspector needs to check outlets is **before** a tenant moves into an apartment. Checking an outlet that a tenant has not complained about wastes time and it is about as necessary as checking the wiring inside the walls of the apartment.

2. During a recent inspection of my apartment, several things were pointed out that needed to be fixed. A work order was made for these things, and then the maintenance men later came out to my apartment and fixed those things without any of my stuff getting in their way.

3. The front and back doors of my apartment are not blocked.

4. The HUD regulation number of windows in my apartment are not blocked.

5. There are no cords nor other tripping hazards on the floor of my apartment.

6. The things that are on my back porch, that I use occasionally, are arranged neatly and they do not block the back door, and they are not causing any real harm to anything or anybody.

Concerning my stuff in my apartment, consider this: the HHA is putting ten (10) hours into a work day so that its employees will have to come to work only four (4) days a week instead of five (5), which makes their lives more enjoyable. Therefore, I do not believe that I am wrong by wanting to put as much stuff in my apartment as I can - without causing any real, tangible problems - thereby making my life more enjoyable. And it also keeps me from having to run to a storage unit every five (5) minutes.

**12**

I am a war-time disabled veteran. For years, 24 hours a day, seven (7) days a week, I put my life on the line for this nation defending freedom and justice, while the HHA was sitting back here in the United States all safe and comfortable. Sometimes, when people learn that I'm a veteran, they thank me for my service. Now, the HHA can thank me for my service by letting me remain in my two-bedroom apartment, that I have come to love and **need** more than ever. It would be the fair and decent thing to do.

I thank the HHA for all of the good things that they have done for me over the years, and because of that, I want to do everything that I can do to satisfy the HHA.

### ACTION OF RELIEF SOUGHT FROM THE HHA

The HHA wants to take adverse action against me because of what they see as "clutter" in my apartment and on my back porch. Therefore, I am asking the HHA to let me remain in my two-bedroom apartment if I immediately remove most of the things that I have on my back porch, and to, gradually over time, decrease the amount of stuff that I have inside of my apartment. I am requesting this with **my guarantee** that I will not put any more things inside of my apartment and on my porches, except groceries and vital things like that, beginning with **this moment**.

Respectfully submitted,

Jimmy L. Brown
870-331-7060

**13**

**18.** But instead of giving me a hearing, the HACH sent to me an even more obnoxious and lowdown letter – dated **March 7, 2022** – than that of "2/16/2022". The letter essentially said that I had failed at everything concerning inspections, including "Failure of access to electrical outlets and plugs". The letter also stated that "the sheriff department will be directed to remove you from the premises.", but she didn't say when. Ms. Graves did not sign the letter. Only the alphabets **L G** were <u>printed</u> on the letter above her name. That means that either Zach Hicks, Mechawana Pearson, or Charles Wright III sent the letter to me.

**19.** Concerning the "electrical outlets", in Ms. Graves' letter to me of **1-27-22** that she signed, in a list of things for me to do to pass an inspection, it was stated, **"2. Make all electrical outlets visible"**. The "electrical outlets" rule of the HACH is one of the most unreasonable, outlandish, and unnecessary rules that anybody ever made for these reasons:

    **A.** Telling tenants to keep all electrical outlets visible creates an **unfair and unnecessary major restriction on tenants liberty** by keeping them from placing some of their furniture and belongings where they might want to. It also prevents tenants from owning or having certain items, because they do not make furniture that "**fit**" the placement of outlets, and they do not **install** outlets in a dwelling or building to fit the placement of furniture. Electrical outlets can be anywhere in a dwelling or building.

    **B.** The only times they need to check outlets is (1) *BEFORE* a tenant moves into an apartment, and (2), if a tenant has a problem getting power out of an outlet. Outlets are not complicated electronic devices. They are simple electrical, not elec*tronic*,

**14**

terminals connected to the wiring of the building. The wiring of the building is connected to circuit breaker(s) and/or fuse box(es). If something **truly unsafe** should happen at the point of the outlet, the circuit breaker(s) will trip and turn the power off making it <u>impossible</u> for the wiring of the building to overheat and possibly catch fire.

    **C.** All of that outlet checking does not ensure nor improve safety, because all it does is tell you if the outlet terminals are connected to the wiring of the building. As a matter of fact, because the outlet checking is unnecessary, it does more **harm** than good because it helps to wear out the outlet. Also, it would be impractical and cumbersome to make outlets visible that are behind big and heavy beds, big and heavy appliances, big and heavy shelves packed with items - some very breakable, and so on.

**20.** The HACH filed their lawsuit against me on March 18, 2022. I was served with the lawsuit on April 14, 2022, by the HACH's attorney through a private server. I later learned that the lawsuit document had **two (2) answer-by dates in it**, which can easily throw off a layperson, someone who does not work with lawsuits every day. Besides that, the **30-day answer-by** date was printed in boldface type on the **very first page**, whereas the 5-day answer-by date was in plain print tucked away in the rest of the lawsuit. This caused me to make a mistake about when to file an answer to the lawsuit, which enabled the HACH to get a Writ of Possession against me without me saying one word against it. All of this was, in every sense of the word, unfair. Because there were two (2) answer-by dates in the lawsuit, the HACH should never have been granted a Writ of Possession in the case **when** it was

**15**

granted. That's because this question can be asked: **"Which date is (was) the correct date?"** The defendant **should not be obligated** to have to ask that question because **there should never be two (2) answer-by dates in a lawsuit** in the first place. There is no doubt that the HACH's attorney, Jim Jackson, knew about the two (2) answer-by dates in the lawsuit, because the person who served me with the lawsuit had the **exact same address and phone number** as Mr. Jackson. Because of that, his honesty and integrity can be called into question.

21. The Writ of Possession was served on me on the morning of May 3, 2022, by the Hempstead County Sheriff Office, and I was shocked and totally surprised because it had not been 30 days since I had been served with the lawsuit. Upon being served with the Writ of Possession, moments later I called the Lone Star Legal Aid office in Texarkana and talked to **Ms. Pui King Wong**, an attorney. I asked her if she could immediately file a request for an injunction in court about the unfairness of the two (2) time-limit dates in the lawsuit, to keep the Writ of Possession from being carried out. She was pessimistic about the idea, because of the time constraints imposed by the Writ, and refused to help me. Later that day I learned that Jim Jackson had told the HACH that they could lock me out of my apartment on the same day that I got the Writ of Possession. I didn't think that that was right because "24 hours after delivery of this Writ" was stated in the Writ. So I called Ms. Wong again, and she agreed with me. Then she asked me where I was as I talked to her on the phone. I told her. She then told me to go to my apartment and stay there so that they could not lock me out. And that's what I did. Sure enough, around 5:00 p.m. of that day, HACH Assistant Executive Director Zack Hicks and two (2) other HACH employees came to my apartment

**16**

to lock me out. I told them what Ms. Wong had told me and they relented and left. **What Jim Jackson did in telling the HACH that they could lock me out of my apartment on the same day that I got the Writ of Possession was dishonest and unethical. He actually told the HACH that they could do something that is illegal**. Because of that illegal action by the HACH's attorney, I believe that the two (2) answer-by dates in the lawsuit were a **deliberate trick** by Jim Jackson to help win the lawsuit.

22. Zack Hicks came back the next morning, May 4, 2022, and locked me out of my apartment. There I was, with my house rent all paid up, and had **truly NOT** hurt anybody nor anything, and these contemptible people (the HACH) had just made me a homeless person (wartime disabled veteran). Mr. Hicks said that they would give me fourteen (14) days to remove my belongings from 1 Hopewell Loop. I asked him what if I could not remove them all in the fourteen (14) days. **I swear to God he said, "We'll work with you". I trusted him, but he lied – he went back on his word**. Some of the reasons that I asked him the question are these: (1) – I was living at the Hope In Action 2 – the homeless shelter – with a limited amount of time to stay there, and I needed time to try to find a place to live, (2) - I had breakable and fragile items in my apartment that needed to be boxed up or packed up carefully, and it takes time to do that, especially if you have only one hand to do it with, (3) – I had not found anyone at that time to help me move, and (4) - there were possible rainy days to consider, and there were a few. On June 6th and 7th I found four (4) people – I had to pay three (3) of them – to help me to move my remaining belongings out of the apartment. We were making great progress when Zack Hicks locked the doors of the apartment on the evening of June 9th **in my face** because he thought that the HACH had given me enough

**17**

time to move out despite the fact that he said that they would "work with" me in moving out. Zach Hicks was acting like there were people living outside in cold weather under the stars and needed the apartment. I swear to God, with the help that I had, I could have gotten my remaining belongings out of the apartment on June 10th thru 12th if Mr. Hicks had not locked the doors on June 9th. I talked to Zack Hicks on the phone for more than **an hour and a half**, and I have the proof of that, on the evening of June 9th **pleading** with him to unlock the doors, but **he refused**. By refusing to unlock the doors, it was Mr. Hicks who was causing a delay, and not me.

23. Accordingly, I decided to ask for a hearing to talk to the HACH Board of Commissioners to get the doors of the apartment unlocked. At the hearing there were only three (3) of the five (5) commissioners there. They, too, like that somewhat clueless-about-right-and-wrong Zach Hicks were very unsympathetic and did not unlock the apartment doors neither. Then I decided to file a petition asking the court to unlock the doors. At the court hearing, the great Honorable Joe Short unlocked the doors and gave me not the two (2) days that I had asked for to finish getting my belongings out of the apartment, but **three (3) days**.

24. Somewhere between the time that Zach Hicks locked my apartment doors in my presence on June 9, 2022, and the day that I went to court, which was several weeks, to get the doors unlocked, Mr. Hicks went into the apartment with some HACH maintenance men and took out at least a trailer load of my belongings including **a closet full of clothes** and costly electronic things. The things were valued at perhaps several thousand dollars. I know this to be the truth for two (2) reasons:

**18**

1. I remember about some of the things that were left in the apartment when Zach Hicks maliciously locked the doors to the apartment when me and my help were diligently trying to remove everything from the apartment.

2. A conversation that I had with a HACH maintenance man about Mr. Hicks taking some of my belongings out of the apartment. He said that they took a trailer load of my things out of the apartment and that Mr. Hicks and another maintenance man "went thataway with it".

Because "thataway" was in the opposite direction to the Hope landfill and the HACH offices, I don't know what Mr. Hicks did with my belongings. Nevertheless, what Zach Hicks did, by locking the doors in my face and later going into the apartment and getting a trailer load of my belongings, **violated a HACH rule** that states:

16. That all property of the resident left on the premises for a period of thirty (30) days after vacating or abandonment of premises by resident, shall be considered abandoned property and said resident's property may be stored at the resident's expense; however, the Authority shall have the right to dispose of such personal property in any manner it deems expedient, without liability for damages. Prior to the disposal of such property, the Authority shall notify the resident, or show that they have tried to notify the resident, of the action taken;

I never vacated nor abandoned the premises, nor my belongings, because I was on the premises on every single day that I could, from May 4, 2022 to June 9, 2022, diligently removing my belongings from 1 Hopewell Loop.

25. Because of the above, I think that what Zach Hicks did, by taking at least a trailer load of my things out of the apartment after he locked the doors in my face, amounts to the true **criminal theft** of some of my property.

26. I believe that the primary main reason for housing inspections has been corrupted over the years. I learned decades ago that the main reason for housing inspections is to ensure the upkeep of the apartment, to maintain the apartments in good repair so that they do not become rundown, rickety shacks. But nowadays inspections seem to be mainly about cleanliness/housekeeping and "clutter", at least with the HACH. One of the reasons that I say this is because when I moved into 1 Hopewell Loop the bathtub was defective. Leola Graves told me personally that they would repair the bathtub. But when I was evicted more than four (4) years later, the HACH still had not repaired the bathtub.

27. The reason that I stated HUD as a defendant in this lawsuit is because Charlene Hale and Leola Graves always let it be known that their actions were directed by HUD, that they were obeying HUD's rules, policies, and directives.

28. I reserve my right to further state this case and to add more counts if necessary, and to make statements of clarification if necessary, and to add more defendants if necessary.

29. The copied documents on the succeeding pages are some of the things that demonstrate how unfair, unreasonable, malicious, outrageous, and outlandish the HACH had been to me and other tenants in the at least sixteen (16) long years leading up to the time that the HACH locked the doors to my apartment and made me a homeless wartime disabled veteran:

**20**

Housing Authority of the City of Hope
720 Texas Street
Hope, AR 71801

February 27, 2006

Jimmy Brown
44 Hopewell Loop
Hope, Arkansas 71801

Dear Ms. Brown:

We inspected your home at 44 Hopewell Loop and the following items
**MUST** be corrected for the home to pass Housing Quality Standards:

1. Remove items from back porch
2. Remove inoperable motorcycle in back yard

There will be an reinspection on your apartment March 8th 2006.

**Please complete the listed items.  Thank you in advance for your
cooperation.**

If you have any questions concerning this notice, please feel free
to contact this office at (870)777-5742.

Sincerely,

Emily Evans
Kelly Homes Manager/Inspector

The HACH did not allow me
to put anything on my
porches. The motorcycle
was not in the backyard be-
cause they had to mow the
backyard. It was parked
neatly up against the rear of
my apartment building. But I
removed the motorcycle
from the HACH property...

**21**



**HOUSING
AUTHORITY
OF THE CITY OF HOPE**

**720 TEXAS STREET**
**HOPE, ARKANSAS 71801**
**SECTION 8 MGR.**

(870) 777-5742
FAX ( 870) 777-1593
(870) 777-6119

> I say again that the HACH did not allow me to put anything on my porches, even when it did not create any true health and safety hazards. Even though the HACH did not give me a full inspection at this particular time, as shown in this letter, they nevertheless evicted me – made me a homeless person – because I had things on my porches. The things were not caus-ing any hazards. That is unfair, low-down, and dirty. This letter is dated 01-27-2022. I received a similar letter about my back porch sixteen (16) years earlier, dated February 27, 2006...

01/27/2022

JIMMY L. BROWN
1 HOPEWELL LOOP
HOPE, AR, 71801-

Dear JIMMY L. BROWN:

Your inspection failed just by observation of your back porch. You have had plenty of time to fix this issue and we have been more than generous with you on this matter. Eviction will proceed.

If you have any questions regarding this letter, please call this office at
870-777-5742.

Sincerely,

Mechawana Pearson

No other qualified individual with a disability in the United States.. shall solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, be subjected to discrimination under any program, service or activity receiving federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. (29 U.S.C. 794). This means that section 504 prohibits discrimination on the basis of disability in any program or activity that receives financial assistance from any federal agency, including the U.S. Department of Housing and Urban Development (HUD) as well as in programs conducted by federal agencies including HUD.

**22**

# HOUSING AUTHORITY OF THE CITY OF HOPE
## 720 TEXAS STREET
### HOPE, ARKANSAS 71801

11/08/2012

JIMMY BROWN
44 HOPEWELL LOOP
HOPE,AR   71801-

Dear Resident:

Your apartment's 3 month inspection was conducted on November 8, 2012. The apartment is somewhat better but needs a few things to pass Housing Quality Standards.

1. Rearrange or dicard some of the combustible items under sink.
2. Remove cord in bedroom that is a tripping hazzard

Thank you in advance for your cooperation.

Sincerely,

Juanita Pittman
Housing Manager

The HACH does not understand certain things like it should. Regarding No. 1., Ms. Pittman was talking about cans of insecticide, spray paint, cleaning liquids, etc. The HACH does not understand that the hot water used in a kitchen sink would never be hot enough to radiate dangerous heat to the items underneath the sink.

**23**



# HOUSING
# AUTHORITY
## OF THE CITY OF HOPE

720 TEXAS STREET          (870) 777-5742
HOPE, ARKANSAS 71801      (870) 777-6119
SECTION 8 COORDINATOR     FAX (870) 777-1593

08/16/2018



If you are a fair person and know right from wrong, then this letter speaks for it-self...

Dear Tenant,

There seems to be a problem with the trash that is on the grounds at Hopewell Loop. Everyone on site needs to have all trash picked up in 24 hours. If there is still trash scattered on the grounds, every tenant on the site will be charged $25.00 fee.

Thank you for your cooperation in this matter.

If you have any questions, please call 870-777-5742 ext.105

Sincerely,

Amber McKamie
Public Housing Manager

This is an Equal Opportunity Program. Discrimination is prohibited by Federal law. Complaints of discrimination may be filed with the Office of Fair Housing and Equal Opportunity, Department of Housing and Urban Development, Room 5204, 451 Seventh St. SW, Washington, DC 20410-2000

**24**

**HOUSING**
**AUTHORITY**
**OF THE CITY OF HOPE**

720 TEXAS STREET          (870) 777-5742
HOPE, ARKANSAS 71801      FAX ( 870) 777-1593
SECTION 8 MGR.            (870) 777-6119

**EQUAL HOUSING OPPORTUNITY**

**01/25/2019**

JIMMY L. BROWN
1 HOPEWELL LOOP

HOPE, AR 71801-

### INSPECTION

An inspection appointment was scheduled  between the hours of 9:00A.M and 4:00 P.M., on
_Monday, January  28 , 2019_(Due to the number of inspections, no certain time of day)

**IF THE HEAD OF HOUSEHOLD CANNOT BE HOME ON THE DATE AND TIME GIVEN ABOVE, A REPRESENTATIVE OVER THE AGE OF 18 MUST BE PRESENT INSTEAD. DO NOT CONTACT ME THE DAY OF THE INSPECTION FOR ARRANGEMENTS. WE WILL NOT COME BACK TO YOUR HOME IF YOU ARE NOT THERE. YOU MAY LOOSE YOUR ASSISTANCE IF ANNUAL INSPECTION IS NOT DONE.**

We strongly recommend steps be taken to ensure that everything in the unit is clean and in good repair at the time of the appointment.

Again, we strongly encourage a preview of the unit and steps be taken to correct anything that may cause the unit to fail prior to the inspection appointment.

Your cooperation with the inspection process is appreciated.

**Pay close attention to the following area:**
- Cleanliness
- Blocked windows/doors
- Tripping hazards such as cords
- Tampering with Smoke Alarms/other items.(unreported damages)

Sincerely,

Charles Wright, III
Inspector

The HACH gives tenants too short of a notice about when an inspection will occur and they do not say what time of day that the inspection will happen, and that is not fair. The third (3) paragraph in this letter is off the mark because the main reason for an inspection is to determine if things about the apartment are in good repair. The HACH doesn't get it, doesn't understand like it should...

**25**

**HOUSING AUTHORITY**
**OF THE CITY OF HOPE**

720 TEXAS STREET
HOPE, ARKANSAS 71801
SECTION 8 COORDINATOR

(870) 777-5742
(870) 777-6119
FAX (870) 777-1593

10/01/2018

Dear Tenant:

Due to numerous tenants not passing inspections, HHA will start picking random apartments to do inspections once a week. If there are apartments that do not pass the inspections, these apartments will be subject to two inspections a week until the problems are resolved.

Thank you for your cooperation in this matter.

If you have any questions, call 870-777-5742 ext.105.

Sincerely,

Amber McKamie
Public Housing Manager

> Numerous tenants were not passing inspections due to the unfair and unreasonable rules and practices of the HACH. And unannounced non-REAC random inspections are against HUD rules. Even the REAC inspectors announce the days when they will inspect...

This is an Equal Opportunity Program. Discrimination is prohibited by Federal law. Complaints of discrimination may be filed with the Office of Fair Housing and Equal Opportunity, Department of Housing and Urban Development, Room 5204, 451 Seventh St. SW, Washington, DC 20410-2000

**HOUSING AUTHORITY OF THE CITY OF HOPE**
**720 TEXAS STREET**
**HOPE, ARKANSAS  71801**

01/28/2019

JIMMY BROWN
1 HOPEWELL LOOP
HOPE,AR  71801-

Dear Resident:

An Inspection was recently done on your apartment.  There were a few
items that need to be corrected to pass the Public Housing Uniform
Physical Condition Standards.

Please find these items listed below

**1.** Please remove all inside furniture off of back porch

It is the goal of the Hope Housing Authority to provide safe, decent
and sanitary housing for our tenants. If these items are not corrected
in a timely manner, you could receive a 30 day eviction notice. A re-
inspection
will be done on your apartment 01/30/2019

Thank you in advance for your cooperation.

Sincerely,

*Amber McKamie*

Amber McKamie
Public Housing Manager

**27**

How do you define "inside" furniture?
There are people in high places making
crazy and unfair rules and "standards"
for public housing tenants, and people in
general, to live by. Housing Authorities
are not penal institutions – tenants have a
right to live free and express themselves.
There is nothing wrong with tenants put-
ting furniture on their porches as long as
it does not create any health and safety
hazards. That is why I'm challenging –
in this lawsuit – parts of the HUD Public
Housing Uniform Physical Condition
Standards as being unconstitutional…

**HOUSING AUTHORITY OF THE CITY OF HOPE**
**720 TEXAS STREET**
**HOPE, ARKANSAS  71801**

01/27/2022

JIMMY L. BROWN
1 HOPEWELL LOOP
HOPE, AR  71801-

Dear JIMMY L. BROWN:

> I think that Leola Graves must have wanted tenants to have to live in almost empty apartments. I say this because of the "electrical outlet" rule of the HACH. And concerning the windows, No. 4, HUD rules say that just one window in each room is enough to be used as a fire exit. The one-window rule exists because some rooms have only one window. And in this letter too, there is no time of day when the inspection will occur...

This notice is to let you know that Hope Housing Authority conducted a monthly inspection of your apartment The inspection failed with more than one violation, therefore the inspection ended.  Because of the number of noncompliance inspections found, **it can be conducted anytime between 9:00a.m.-4:00p.m. .** **Your presence for this inspection is required.** However, if you aren't present, the inspection will still be done. Below is a list suggestions to pay close attention to:

1. Remove clutter through out the apartment.
2. Make all electrical outlets visible.
3. Make under sinks accessible.
4. Make sure all windows and doors are accessible.
5. No blockage in areas to access a true inspection.

Refusing to
Refusing to allow the inspection will result in termination of your assistance it is a violation of your lease.

Mr. Brown this is your finial notice, we have been addressing this matter for an extended time and you are aware of the consequence given you.

Thank you in advance for your cooperation

Sincerely

Leola Graves
**Leola Graves**
Public Housing Manager

**28**



**HOUSING
AUTHORITY
OF THE CITY OF HOPE**

720 TEXAS STREET
HOPE, ARKANSAS 71801
SECTION 8 MGR.

(870) 777-5742
FAX ( 870) 777-1593
(870) 777-6119

The HACH never gives tenants the time of day when an inspection will occur. They want tenants to wait around in their apartments when the tenants might have other important matters to take care of. And the dates in this letter are confusing.

**03/24/2021**

JIMMY L. BROWN
1 HOPEWELL LOOP

HOPE, AR 71801-

### ANNUAL INSPECTION

In accordance with the Hope Housing Authority Policy, Annual Inspections are due prior to renewal of your lease.  If the inspection is not completed before your renewal date, your lease is void and you cannot maintain your apartment.

An inspection appointment was scheduled  between the hours of 9:00A.M and 4:00 P.M., on
__1- 1 -21_____ . (Due to the number of inspections, no certain time of day)

**IF THE HEAD OF HOUSEHOLD CANNOT BE HOME ON THE DATE AND TIME GIVEN ABOVE, A REPRESENTATIVE OVER THE AGE OF 18 MUST BE PRESENT INSTEAD. DO NOT CONTACT ME THE DAY OF THE INSPECTION FOR ARRANGEMENTS. WE WILL NOT COME BACK TO YOUR HOME IF YOU ARE NOT THERE. YOU MAY LOOSE YOUR ASSISTANCE IF ANNUAL INSPECTION IS NOT DONE.**

We strongly recommend steps be taken to ensure that everything in the unit is clean and in good repair at the time of the appointment.

Again, we strongly encourage a preview of the unit and steps be taken to correct anything that may cause the unit to fail prior to the inspection appointment.

Your cooperation with the inspection process is appreciated.

**Pay close attention to the following area:**
•Cleanliness
• Blocked windows/doors
• Tripping hazards such as cords
• Tampering with Smoke Alarms/other items.(unreported damages)

Sincerely,

Charles Wright, III
Inspector

**29**



# HOUSING
# AUTHORITY
## OF THE CITY OF HOPE

**720 TEXAS STREET**          **(870) 777-5742**
**HOPE, ARKANSAS 71801**      **FAX ( 870) 777-1593**
**SECTION 8 MGR.**            **(870) 777-6119**



This letter says that I virtually failed at everything concerning inspections. But, of course, it is one big outrageous lie. I did not deserve this kind of treatment. Because Leola Graves did not sign this letter, either Machawana Pearson, Charles Wright III, or Zach Hicks sent this letter to me.

March 7, 2022

Mr. Jimmy Brown
1 Hopewell Loop
Hope, Arkansas 71801

Mr. Brown:

Hope Housing Authority reviewed your response to the eviction notice and a decision was reached. Effective April 1, 2022, your lease will be terminated for failure to comply with the Authority's policies and requests as listed below:

➢  Failure to maintain the resident unit in a safe and decent condition.
➢  Failure to allow scheduled inspections when requested.
➢  Failure to correct violation as requested.
➢  Failure to remove excessive clutter from the unit.
➢  Failure to transfer to a designated unit offered to meet requirements.
➢  Failure of access to electrical outlets and plugs.
➢  Failure not allowing easy access to hall entrance and rooms.

Mr. Brown because of your long residence with the Housing Authority this is a difficult decision, we will re-consider this decision if you comply with the above list by the 20th of March 2022. But failure to do so the eviction will remain, and the sheriff department will be directed to remove you from the premises.

We would appreciate your cooperation in this matter.

Sincerely,

L G

Leola Graves
Executive Director

This is an Equal Opportunity Program. Discrimination is prohibited by Federal Law. Complaints of discrimination may be filed with the Office of Fair Housing and Equal Opportunity, Department of Housing and Urban Development, Room 5204, Seventh St. Washington, DC 20410-2000.

## 30



**HOUSING AUTHORITY**
OF THE CITY OF HOPE

720 TEXAS STREET
(870) 777-5742
FAX (870) 777-1593

HOPE, ARKANSAS 71801
SEC. - 8 MGR.
(870) 777-6119

02/16/2022

JIMMY L. BROWN

1 HOPEWELL LOOP

HOPE,AR 71801-

JIMMY L. BROWN:

Due to your failure to maintain the requirements for tendency in the unit you presently occupy, you no longer qualify for a two bedroom. Transfer procedures will start immediately, effective February 24, 2022. You will need to come and get the paperwork today to submit to the utility companies in order to transfer service. An appointment to sign paper work is on this day after you return the paperwork.

Hope Housing Authority have gone beyond normal circumstance and given you reasonable accommodations and you yet have repeatedly violated the inspection of the unit.

This is a management decision, therefore making it mandatory.

Sincerely,

Leola Graves

Leola Graves

Management

Leola Graves kicked me around like I was a convict in prison. First, she kicked me out of my one-bedroom apartment into a two-bedroom apartment thinking that it would solve *her* "clutter" problem. Then, second, after I had gotten to love the two-bedroom apartment, she maliciously decided to kick me back into a one-bedroom apartment again. She did not care if I had to throw away some of my things, some of them costly, in order to fit into a one-bedroom apartment again. I believe Ms. Graves sent this letter to me because I told Charles Wright III, the inspector, that I was not going to move the "wood material" — a little plywood and a few short planks off my back porch…

**31**



# FOR YOUR INFORMATION

- THIS NOTICE IS TO LET TENANTS KNOW THAT THE MOWERS CAN NOT MOW THE YARDS WITH THE TRASH THAT IS STROWED AROUND THE COMPLEX. ALL TENANTS MUST PICK UP THEIR YARDS AND FREE THEM OF TRASH, WATER HOSES, BICYCLES ETC. IF YOU LEAVE ANY OF THE ITEMS LEFT OUT IN THE WAY OF THE MOWERS, THEY WILL EITHER BE RUN OVER BY THE MOWERS OR HAULED OFF...(IT IS YOUR RESPONSIBILITY). IF MAINTENANCE HAS TO PICK UP THE TRASH TO BE ABLE TO MOW THE YARDS, YOU WILL BE CHARGED **$50.00** FOR TRASH PICK UP. I WILL BE COMING AROUND THIS AFTERNOON TO TAKE PICS OF THE GARBAGE. EVERYONE WILL BE CHARGED...NO EXCUSES!!!!

HOPE HOUSING AUTHORITY
720 TEXAS
HOPE, AR 71801
(870)777-5742 OFFICE
(870)777-5742 FAX



This notice was undiplomatic and unreasonable, especially because of the $50.00 charge...

**32**

HOUSING AUTHORITY OF THE CITY OF HOPE
720 TEXAS STREET
HOPE, ARKANSAS 71801

10/24/2012

JIMMY BROWN
44 HOPEWELL LOOP
HOPE, AR 71801-

Dear Resident:

Your apartment will be inspected on October 26, 2012. This will be your
special inspection for the Month of October. If you keep all the previous
items corrected, there should be no problems.  If there are any items that
need to be repaired, please call the office and report them.  I encourage you
to call and report problems as soon as you discover them.  This could avoid a
small problem becoming a large problem.

**THIS INSPECTION WILL NOT BE RESCHEDULED. I WOULD APPRECIATE YOUR PRESENCE AT
THE TIME OF THE INSPECTION, BUT IF YOU ARE NOT HOME, I WILL STILL CONDUCT THE
INSPECTION.**

**I WOULD APPRECIATE EVERYONE'S COOPERATION DURING THIS INSPECTION.    IF YOU
HAVE ANY QUESTIONS CONCERNING THIS NOTICE, PLEASE FEEL FREE TO CALL ME AT
777-5742.**

Cordially,

Juanita Pittman
Housing Manager

*The HACH did not allow tenants to reschedule non-REAC inspections, which is against HUD rules…*

**33**

HOUSING AUTHORITY OF THE CITY OF HOPE
720 TEXAS STREET
HOPE, ARKANSAS  71801

01/09/2017

JIMMY BROWN
44 HOPEWELL LOOP
HOPE,AR  71801-

Dear Resident:

An Inspection was recently done on your apartment.  There were a few
items that need to be corrected to pass the Public Housing Uniform
Physical Condition Standards.

Please find these items listed below

1. Remove clutter and furniture from front and back porches.
2. Remove garbage/debris
3. Declutterize your apartment


   It is the goal of the Hope Housing Authority to provide safe, decent
and sanitary housing for our tenants. If these items are not corrected
in a timely manner, you could receive a 30 day eviction notice.

Thank you in advance for your cooperation.

Sincerely,

Juanita Brown
Housing Manager

Using plain down-to-earth good sense, there is nothing wrong with tenants putting furniture on their porches. People all over the world do it. And to the HACH, garbage/debris can mean just about anything — a potted plant, for instance...

**34**

# MANDATORY
# 2010 MAYS' HOUSING MEETING

**2:00 P.M.**



There is no rule in tenants' leases that demand that they attend resident council meetings. The resident council is an organization that is governed by the residents, and not the HACH.

*Join other residents in making a difference in your neighborhood...*
*Hope Housing needs your support and your neighbors need a voice.*
*The council belongs to you and is only as good as you make it.*

**FAILURE TO ATTEND MEETING MAY RESULT IN LEASE BEING TERMINATED!**

*May 27, 2010, AT 2:00 P.M.*

**35**

**HOUSING AUTHORITY OF THE CITY OF HOPE**
**720 TEXAS STREET**
**HOPE, ARKANSAS 71801**

October 27, 2009

JIMMY BROWN
44 HOPEWELL LOOP
HOPE, AR 71801-

Dear Resident:

> Concerning No. 7, in this letter, because "household" encompasses everything about a house or an apartment, including the porches, there is nothing wrong with putting furniture neatly on a porch as long as it does not create any health and safety hazards, such as blocked doors and windows...

This letter is to inform you that on November 2, 2009 there will be a REAC Inspection that will be conducted by HUD. Not all apartments will be inspected, the REAC inspector will randomly select the apartments to be inspected.

This inspection is conducted to ensure that your apartment is safe, decent and sanitary. This inspection cannot be rescheduled. We would appreciate your presence at the time of inspection, but if you cannot be there we will proceed with the inspection.

Hope Housing Authority is requesting that you be sure that the following items are corrected before and upon inspection:

1. Do not block windows, doors and hallways.
2. Make sure that range and range hood is free of grease.
3. Make sure that the shower and bathtub has been cleaned and free of mold and mildew.
4. Make sure that you do not have **cable cords** running across floors or in hallways.
5. Do not remove screens from windows or put holes in screens running cords for satellite. Satellite dishes **are not** to be installed on the roof.
6. Make sure that you have cleaned your refrigerator inside and out.
7. Make sure that your apartment is free of trash and debris; **household furniture is not** allowed on porches.
8. Please **do not** remove the **battery** from the **smoke alarm**.
9. For your protection and the safety of the PHA property, please disconnect all water hoses. In freezing weather, this could cause major damage.

Thank you in advance for your cooperation during this inspection.

Sincerely,

Charleen S. Hale
Executive Director

**36**

**HOUSING AUTHORITY OF THE CITY OF HOPE**
**720 TEXAS STREET**
**HOPE, ARKANSAS 71801**

> Concerning No. 7, in this letter, because "household" encompasses everything about a house or an apartment, including the porches, there is nothing wrong with putting furniture neatly on a porch as long as it does not create any health and safety hazards, such as blocked doors and windows...

05/05/2015

Resident
HOPE HOUSING AUTHORITY OF THE CITY OF HOPE

Dear Resident:

This letter is to inform you that on June 11, and June 12, 2015 there will be a REAC Inspection that will be conducted by HUD. Not all apartments will be inspected, the REAC inspector will randomly select the apartments to be inspected.

This inspection is conducted to ensure that your apartment is safe, decent and sanitary. This inspection cannot be rescheduled. We would appreciate your presence at the time of inspection, but if you cannot be there we will proceed with the inspection.

Hope Housing Authority is requesting that you be sure that the following items are corrected before and upon inspection:

1. Do not block windows, doors and hallways.
2. Make sure that range and range hood is free of grease.
3. Make sure that the shower and bathtub has been cleaned and free of mold and mildew.
4. Make sure that you do not have **cable cords** running across floors or in hallways.
5. Do not remove screens from windows or put holes in screens running cords for satellite. Satellite dishes **are not** to be installed on the roof.
6. Make sure that you have cleaned your refrigerator inside and out.
7. Make sure that your apartment is free of trash and debris; **household furniture is not** allowed on porches.
8. Please **do not** remove the **battery** from the **smoke alarm**.
9. For your protection and the safety of the PHA property, please disconnect all water hoses. In freezing weather, this could cause major damage.

Thank you in advance for your cooperation during this inspection.

Sincerely,

Leola Graves

Leola Graves
Executive Director

**37**



# RANDOM HOME VISITS

Effective immediately, we will be conducting random home visits. Your compliance is mandatory and non-compliance is considered to be a violation of your lease. The purpose of the visit is to ensure you are meeting the expectations as agreed upon when you entered the housing program. Upkeep of the apartment as well appliances and fixtures are a must. Also, if you have concerns you want to talk about privately, this will be a great opportunity to do so.

Numerous tenants were not passing inspections due to the unfair and unreasonable rules and practices of the HACH. And unannounced non-REAC random inspections are against HUD rules. Even the REAC inspectors announce the days when they will inspect...

**38**



# HOUSING AUTHORITY
## OF THE CITY OF HOPE

**EQUAL HOUSING OPPORTUNITY**

| | |
|---|---|
| **720 TEXAS STREET** | **(870) 777-5742** |
| **HOPE, ARKANSAS 71801** | **(870) 777-6119** |
| **SECTION 8 Coordinator** | **FAX (870) 777-1593** |

11/03/2017

JIMMY BROWN
1 HOPEWELL LOOP
HOPE, AR 71801

> This is another letter that does not say what time of day that the inspection will occur, which, of course, is unfair.

Dear Jimmy Brown:

Due to the previous failed inspections, HHA Inspector and Public Housing Manager will be inspecting your unit beginning 11/09/2017. This inspection will take place between 8:00AM-4:00PM. We will be inspecting your unit weekly. If you fail inspection due to any of the items listed below, a 30 day eviction will follow.

### Pay close attention to the following area:
- Cleanness
- Blocked windows/doors
- Hazards cords
- Tampering with Smoke Alarms/other items.(unreported damages)
- Clutter

If you have any questions, please call the Housing Authority office at 870-777-5742

Sincerely,

Amber McKamie
Public Housing Manager

No other qualified individual with a disability in the United States.. shall solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, be subjected to discrimination under any program, service or activity receiving federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. (29 U.S.C. 794). This means that section 504 prohibits discrimination on the basis of disability in any program or activity that receives financial assistance from any federal agency, including the U.S. Department of Housing and Urban Development (HUD) as well as in programs conducted by federal agencies including HUD.

### COUNT 1

Ms. Graves sent to me a letter, dated 2-16-22 informing me of some adverse action that the HACH was going to take against me. In response to the letter, I submitted a diplomatically written "Request For A Hearing" to the HACH in accordance with regulation 24 CFR 966.50-966.57. The HACH did not give me the hearing. By not giving me the hearing, the HACH violated 24 CFR 966.50-966.57 and thereby violated my civil rights, as guaranteed to me by the First and Ninth Amendments to the United States Constitution.

### COUNT 2

In 2010 and 2012, my eviction trials were solely about me having a "cluttered" apartment. At my eviction trial in 2010, the HACH was granted a Writ of Possession against me. But at my eviction trial in 2012, the court found that I was suffering from the mental illness of hoarding which caused me to "clutter" my apartment, and denied the HACH a Writ of Possession against me. The HACH accepted the court's decision because they did not appeal it. Mental Illness is a disability. It is against the law for government agencies and businesses to discriminate against, and punish persons for their disabilities. Leola Graves and the HACH, by filing a lawsuit against me and evicting me, discriminated against me because of, and punished me for my mental illness and thereby violated my civil rights as guaranteed to me by the First and Ninth Amendments to the United States Constitution.

### COUNT 3

The HACH sent to me a letter, dated February 27, 2006, that states "Remove items from back porch". More than **sixteen (16) long years** later, they were still harassing me and other

**40**

tenants about the things that we put on our porches, no matter how neatly and safely the things were placed there – safely meaning not blocking any doors nor windows. This was because the HACH had earlier misinterpreted a REAC write up of my apartment concerning "refuse on the back porch" – "refuse" meaning the kind of stuff that you put in a trash bag. Me putting things on my porches, including "wood material", is one of the reasons why the HACH evicted me, but there was nothing in my lease nor any HUD rule that states that I could not put things on my porches. The HACH, by not allowing me to put things on my porches violated my civil rights as guaranteed to me by the First and Ninth Amendments to the United States Constitution.


### COUNT 4

In reference to Count 3 above, the HACH sent to me a letter, dated 1-27-22, that stated "your inspection failed just by observation of your back porch. You have had plenty of time to fix this issue and we have been more than generous with you on this matter. Eviction will proceed". The letter was signed by Mechawana Pearson. They did not even give me a full inspection, yet the HACH **did not mind at all** about making me a **homeless person** simply because of what they had observed on my back porch. That was a dirty, lowdown shame and a disgrace to the Almighty and the United States of America. The HACH, by evicting me because of what they had observed on my back porch, and without giving me a full inspection, violated my civil rights as guaranteed to me by the First and Ninth Amendments to the Constitution.

**41**

## COUNT 5

Another reason that Ms. Graves and the HACH evicted me is because I did not "make all electrical outlets visible" in my apartment. The "electrical outlets" rule of the HACH is one of the most unreasonable, outlandish, and unnecessary rules that anybody ever made. That's because outlets can be anywhere in a dwelling or building. It would be impractical and cumbersome to make outlets visible that are behind big and heavy beds, big and heavy appliances, big and heavy shelves packed with items – some very breakable, and so on. Making all electrical outlets visible also creates an unfair and unnecessary major restriction on tenants liberty by keeping them from placing some of their furniture and belongings where they might want to. There was nothing stated in my lease, nor any HUD rule about me having to make all electrical outlets visible in my apartment. Therefore, by evicting me because I did not make all electrical outlets visible in my apartment, the HACH violated my civil rights as guaranteed to me by the First and Ninth Amendments to the United States Constitution.

## COUNT 6

Me and the help that I had were diligently working to remove my belongings from my apartment when Zach Hicks locked the doors to the apartment in my presence. Later, before I could go to court and get the doors opened again, Mr. Hicks went into the apartment and removed a trailer load of my property and went "thataway" with it. In doing this, Mr. Hicks violated HACH rule No. 16 under the **Resident's Obligations Under the Lease Agreement** that is stated in the HACH's Resident's Handbook. Because he violated rule No. 16, Mr. Hicks removal of my property and going "thataway" with it constituted the true criminal

**42**

theft of some of my property. By locking the doors of 1 Hopewell Loop in my face and later stealing some of my property, Zack Hicks and the HACH violated my civil rights as guaranteed to me by the First and Ninth Amendments to the United States Constitution.

## COUNT 7

The HACH served me with a complaint that had two (2) answer-by dates in it, which can easily throw off a layperson, someone who does not work with lawsuits everyday. Later, the HACH's attorney, Jim Jackson, told the HACH that they could lock me out of my apartment on the same day that I was served with the Writ of Possession that the HACH was granted against me. Mr. Jackson telling the HACH that they could do something that is illegal is an indication that the two (2) answer-by dates in the complaint was a maneuver by Mr. Jackson to help the HACH win their lawsuit. The HACH, by placing two (2) answer-by dates in their complaint, denied me my right to fair play in the matter because defendants should never be obligated to have to ask the question, "which date is the correct date?" Accordingly, the HACH, in placing two (2) answer-by dates in their complaint, violated my civil rights as guaranteed to me by the First and Ninth Amendments to the United States Constitution.

## COUNT 8

The HACH did not serve me with at least two (2) documents that they filed in court after I was served with their complaint. In not doing this, the HACH violated ARCP and denied me my right to fair play in the matter. Therefore the HACH violated my civil rights as guaranteed to me by the First and Ninth Amendments to the United States Constitution.

**43**

## COUNT 9

For approximately sixteen long years, up until and after they made me a homeless person, the HACH subjected me to its unfair and unreasonable rules, actions, and practices – as stated about in this complaint – that caused me some major problems and distress, some of them financial. In doing this, the HACH violated my civil rights as guaranteed to me by the First and Ninth Amendments to the United States Constitution.

## III. DAMAGES

30. The actions and inactions of the defendants cause me damages due, but not limited to:

   1. Having to pay $156 a month more in house rent. My current residence has the cheapest rent that I have found,

   2. Having to pay $200 a month more for utility costs, especially in the wintertime, because the house is all electric. Electric heat cost much more than gas heat,

   3. The HACH caused me financial problems for years because I had to rent a storage unit for some of my belongings, that could have been kept just as well inside my apartment,

   4. Zach Hicks took a trailer load of my property out of my apartment when he should not have, and did away with it, which might have been valued at several thousand dollars,

   5. Making me an actual homeless person for 30 days. I had to live in a homeless shelter,

   6. I do not have a utility allowance for the amount that I pay for house rent,

   7. Having to live in a house that is not of the good quality condition and not as structurally sound as the HACH apartments. The house needs some repairs, and it has

**44**

drafts in it, which causes higher utility costs. One of the worst things about the structure of the house is that for some reason the floors of the house are a few inches below ground level. This causes water to come out onto the floors, especially the living room floor, sometimes during heavy rainfall. The landlord thought that he had fixed the problem, but more repairs are pending, and

8. My blood pressure was aggravated, and I was more stressed out for around sixteen (16) long years because of constant harassment of me about my "clutter", eviction threats, eviction letters, and complaints from three (3) lawyers, all of this and more, when I was truly NOT causing any harm to anybody nor anything.

**31.** I am entitled to punitive damages from the defendants because the conduct of the defendants was willful and reckless for a long extended period of time-**sixteen (16) years**.

WHEREFORE, PREMISES CONSIDERED, I am requesting that I be granted judgment against the defendants for compensatory and punitive damages of two (2) million dollars ($2,000,000.00) and to any and all other relief to which I might be entitled.

I am requesting a trial by a jury.

Respectfully submitted,

*Jimmy L. Brown*

Jimmy L. Brown
214 W. 8th St.
Hope, Arkansas 71801
870-330-5040

**45**